**BRAND et al. v. CHICAGO HOUSING AUTHORITY.**

**No. 7581.**

Circuit Court of Appeals, Seventh Circuit.

May 24, 1941.

Joseph M. Jacobs, H. B. Ritman, and Pearl M. Hart, all of Chicago, Ill., for appellant.

Barnet Hodes, A. A. Pantelis, Chas. P. Horan, Corp. Counsel, and Walter F. Dodd, all of Chicago, for appellees.

Before EVANS, MAJOR, and KERNER, Circuit Judges.

MAJOR, Circuit Judge.

This is an appeal from a decree, entered December 3, 1940, dismissing plaintiff's complaint for want of equity. The action, brought by ten named plaintiffs on behalf of themselves and others similarly situated, sought to enjoin the defendant from instituting or maintaining any proceeding for the purpose of evicting them from Federally owned Housing Projects operated by the defendant. Plaintiffs were in possession as tenants of apartments in two Federal Housing Projects known as Jane Addams House and Julia Lathrop Homes, located in the City of Chicago, and operated under the authority of the United States Housing Act of 1937, § 1 et seq., as amended, 42 U.S.C.A. § 1401 et seq., and the Illinois Housing Authorities Act, Illinois Revised Statutes, Chapter 67½, approved March 19, 1934.

Defendant, a local Housing Authority, is empowered by the Illinois Act to operate Projects, to act as agent of the Federal Government in the operation of a Project, to establish and revise rents and charges, and in the leasing of any Housing Project owned by the Federal Government to " * * * enter into such trust indentures, leases or agreements as may be necessary, convenient or desirable. * * *" The Federal Act provides:

"It is hereby declared to be the policy of the United States to promote the general welfare of the Nation by employing its funds and credit, as provided in this chapter, to assist the several States and their political subdivisions to alleviate present and recurring unemployment and to remedy the unsafe and insanitary housing conditions and the acute shortage of decent, safe, and sanitary dwellings for families of low income, in rural or urban communities, that are injurious to the health, safety, and morals of the citizens of the Nation." 42 U.S.C.A. § 1401.

It defines dwellings in low rent housing:

"The dwellings in low-rent housing * * * shall be available solely for families whose net income at the time of admission does not exceed five times the rental * * * of the dwellings to be furnished such families, except that in the case of families with three or more minor dependents, such ratio shall not exceed six to one." 42 U.S.C.A. § 1402.

It defines families of low income as those "who are in the lowest income group and who cannot afford to pay enough to cause private enterprise in their locality or metropolitan area to build an adequate supply of decent, safe, and sanitary dwellings for their use." 42 U.S.C.A. § 1402.

Section 1412(d) provides: "The Authority may lease any Federal low-rent-housing project, in whole or in part, to a public housing agency. * * *" And (e) authorizes the Authority to fix rentals within the standards therein prescribed "pending sale or lease."

Defendant, by contract entered into with the United States Housing Authority December 15, 1937, became the lessee of the Projects mentioned. The contract, among other things, provided for a minimum and maximum schedule of rents for tenants, repeated the statutory ratio of maximum income of tenants in proportion to rental, required that dwellings in the Project be made available to "families who are in the lowest income group," and, for the accomplishment of this purpose, provided that the scale of rentals prescribed by the contract "may, from time to time, subject to the approval of the Administrator (of the United States Housing Authority) be revised by the lessee."

A second contract covering the same Projects, was entered into between the same parties for the period from January 1, 1940, to September 30, 1942, which contained a schedule of rentals sixteen per cent less than those provided in the former contract, and also a schedule of net income maximum standards of a lesser amount than those formerly provided, together with the provision "the dwellings in the Project shall be occupied only by families whose net income, after admission, do not exceed the statutory income maximum." Both contracts between the defendant as lessee, and the United States Housing Authority as lessor, provided: "The Lessee will prepare and use in connection with the

Project a standard form of dwelling lease for the letting of the dwelling units included in the demised premises which shall be satisfactory in form and substance to and approved by the Lessor." A form of lease approved by the United States Housing Authority was entered into and signed by plaintiffs at the time of their selection as tenants, which contained the following provision: "This lease shall be automatically renewed for successive terms of one month each at the rental hereinafter specified. Either the Landlord or the Tenant may terminate the tenancy on any day during the term, provided the party terminating the tenancy gives the other party hereto 15 days prior notice in writing."

Plaintiffs qualified and were selected by the defendant as tenants upon the rental basis provided in the first contract between the defendant and the United States Housing Authority. In conformity with the statute, the dwellings in low-rent-housing were provided only where the net income did not exceed a designated ratio to the amount fixed as rental. Therefore, the reduction of the rentals in these Projects by the second contract, also reduced the net minimum income required for eligibility. In other words, by reason of the reduced rentals, plaintiffs who had been selected and accepted as eligible under a higher rental, became ineligible.

■ The contested issues may be summarized into the single question as to whether defendant was authorized to reduce rentals and thereby disqualify plaintiffs as tenants. Plaintiffs seek to maintain the negative, and the defendant the affirmative, of such issue.

■ Plaintiffs' position rests largely on the contention that by reason of their acceptance as tenants, they acquired a vested property right which could not be destroyed by what is claimed to have been the unreasonable and arbitrary act of the defendant in changing the qualifications necessary for them to continue as tenants. No authorities are cited which sustain this position, and we think it is without merit. Undoubtedly, the United States Housing Authority was empowered to fix rentals, and to change them as circumstances and experience might justify. It follows, so we think, that it also had the authority to include in its lease with the defendant a schedule of rentals and to require defendant to lease the Projects in accordance with such schedule. In addition, defendant

was expressly authorized by the Illinois Act to fix such rentals. Defendant had no discretion but to reduce the rentals in conformity with its second contract with the United States Housing Authority. Any property right acquired by the plaintiffs was circumscribed by the terms and conditions upon which it was founded. True, as tenants, they acquired the right of possession, but this right was limited by the terms of the lease by which such right was obtained. By express provision thereof, either party was entitled to cancellation on fifteen days notice to the other. It is our opinion that this provision with reference to the termination of the tenancy is valid and binding upon plaintiffs in the same manner as though the lessor had been a private person rather than a Governmental Agency. As was said in Lynch v. United States, 292 U.S. 571, 579, 54 S.Ct. 840, 843, 78 L.Ed. 1434: " * * * When the United States enters into contract relations, its rights and duties therein are governed generally by the law applicable to contracts between private individuals. * * *"

■ Neither do we think there is merit in the argument that plaintiffs were deprived of due process because no hearing was allowed them upon the matter of rental reduction. As already shown, the authority to fix rentals, as might be expected, was in the United States Housing Authority, the owner of the Projects. There is nothing in the Act which indicates, and reason and common sense preclude the idea, that the tenants were entitled to be heard upon a matter solely for determination by the owner of the property.

■ It is also argued that defendant's eviction proceedings are contrary to the public policy as declared by both the Federal and State Housing Acts. In the first place, this argument ignores the terms and conditions of the lease by which plaintiffs obtained possession, and in the second place, there is no policy expressed or implied by which a family obtaining possession has a continuing and indefinite right of tenure. The policy of the Act, as we understand it, is to provide better housing facilities for "families who are in the lowest income group." Obviously, the Government can not provide facilities for all families who may be worthy, and it is equally apparent that the Government has a right to determine who it will regard as entitled to its beneficence. The fact that the Gov-

ernment selected plaintiffs as the object of such beneficence does not preclude it from determining at a later time that the purpose of the Act will be better served by the selection of some other family of the same or lower income class. To hold, as plaintiffs would have us do, that the mere selection of a tenant carries with it a continuing right of tenure irrespective of the terms and conditions upon which the tenancy was founded, would not only contravene the purpose and policy of the Act, but would come near to destroying it.

We do not doubt, as pointed out by plaintiffs, but that their eviction will result in hardships. This is a result which inevitably follows upon the termination of any lease which, by its terms, has been advantageous to the lessee. Such a consequence, however, regrettable as it is, can not determine the rights of the parties as fixed by law and the terms of the lease.

It is therefore our judgment that the bill of complaint failed to state a cause of action, and the decree dismissing it is affirmed.