MAHENDRA RUDRA SHARMA, Plaintiff-Appellant, *v.* STATE OF HAWAII, DEPARTMENT OF LAND AND NATURAL RESOURCES, Defendants-Appellees, and JOHN DOES A-E, Defendants

NO. 8686

(CIVIL NO. 50268)

NOVEMBER 30, 1983

LUM, C.J., NAKAMURA, PADGETT, HAYASHI, AND WAKATSUKI, JJ.

OPINION OF THE COURT BY NAKAMURA, J.

Hawaii Revised Statutes (HRS) § 171-3 vests the management, administration, and control of the public lands of the State of Hawaii in the Department of Land and Natural Resources (the department).[1] Must the department's executive board, the Board of Land and Natural Resources (the Board), acting on behalf of the State as the lessor of land, follow the directives of HRS Chapter 91, the Hawaii Administrative Procedure Act (HAPA), in cancelling a lease? Plaintiff-appellant Mahendra Rudra Sharma (Sharma or the plaintiff) contends the Board was obligated to do so in cancelling his lease of a tract of public land for agricultural purposes. But HAPA did not apply because the Board was not engaged in rule making or adjudication when it acted to cancel the lease; and since there was a clear breach of the lease by Sharma, the awards of summary judgment to the State by the Circuit Court of the First Circuit are affirmed.

---

[1] HRS § 171-3 provides:
   Department of land and natural resources. The department of land and natural resources shall be headed by an executive board to be known as the board of land and natural resources. The department shall manage, administer, and exercise control over public lands, the water resources, and minerals and all other interests therein and exercise such powers of disposition thereof as may be authorized by law. The department shall also manage and administer the state parks, historical sites, forest, fish and game reserves of the State, the forest reserve, and any other functions assigned to it by law.

I.

The State, through Board action, leased a tract of 743.65 acres of government land situated at Wakiu, Hana, Maui, to Sharma for a term of twenty-nine years commencing on May 11, 1973 and running to October 16, 2001. Under General Lease No. S-4378, Sharma was required *inter alia* to pay rent in semi-annual installments of seven thousand dollars each after an initial period of two years when rent was waived,[2] to procure and maintain at his own expense a comprehensive public liability insurance policy when required by the Board, and to post an appropriate performance bond.

Sharma obtained an insurance policy insuring himself and the State against possible personal injury and property damage claims resulting from his occupancy of the leased land shortly after the execution of the lease. But he failed to post the performance bond requested by the Board, and it reminded him of the neglect on July 17, 1973. Though the deadline was extended to August 3, 1973, he failed to furnish the requested security. The Board, however, overlooked the matter until 1975 when Sharma sought approval of a plan to subdivide and sublease a portion of the land.[3]

The Board denied Sharma's request, but a review of the lease alerted the department to the lessee's continuing failure to meet the bond requirement and to the lapse of the liability insurance policy. Sharma was then advised by letter that unless the bond was posted and the lapsed policy was replaced, the department would recommend that steps be taken by the Board to cancel the lease. The threat of adverse action did not

---

[2] The lease waived the payment of rent for the first two years, fixed the annual rent at $14,000 for the next eight years, and provided for the redetermination of rent at the expiration of the tenth and twentieth years of the lease term.

[3] By letter dated June 13, 1973, Sharma's attorney asked the department to waive or postpone the posting of the performance bond for a period of up to two years. The department's response was that the bond provision was a standard provision in agricultural leases issued by the department and that it could not recommend that the Board waive or postpone the requirement. The attorney thereupon assured the chairman of the Board that "the bond will be posted." But it never was.

result in a cure of the defaults, and the department informed Sharma that a recommendation to formally serve a notice of default upon him would be presented to the Board at its next meeting.

The departmental suggestion to initiate the cancellation process was adopted by the Board at the meeting conducted on November 7, 1975. It authorized a termination of the lease unless the omissions were remedied within sixty days of the service of notice of default, which was given on November 12, 1975. Subsequently, Sharma was also given notice of a further breach of the lease, non-payment of the rent installment due on November 11, 1975.

The Board voted to cancel General Lease No. S-4378 on February 13, 1976, since Sharma had not moved to cure any default. And by a letter dated February 26, 1976, it informed him that the lease had been cancelled as of the date of the Board action. Sharma, however, paid the delinquent rent on February 17, 1976, and thereafter sought to have the termination reconsidered. A plea for reconsideration was presented by his attorney at the meeting of March 25, 1976, but the Board chose not to review its earlier action in view of the continuing neglect to secure a performance bond and liability insurance. The land subject to the lease was repossessed by the State thereafter and the lease was resold at public auction.

Sharma filed suit against the State in the Circuit Court of the First Circuit on December 23, 1976, averring the cancellation constituted a breach of contract that resulted in a forfeiture. But the complaint was dismissed on February 10, 1978 for lack of prosecution. The plaintiff moved for reconsideration of the dismissal on December 12, 1978, which the circuit court initially denied. The court, however, later relented and vacated the order dismissing the complaint. It also gave plaintiff leave to file an amended complaint.

The amended pleading alleged *inter alia* that the State breached the lease, the plaintiff's breaches were of a non-material variety, the State had waived any right to cancel the lease, and the plaintiff had been denied due process in several ways. After the State's responsive pleading was submitted, the plaintiff moved for summary judgment primarily on grounds that he had been deprived of due process by the Board's failure

to follow HAPA's dictates in effecting the lease cancellation. The State countered with its motion to dismiss or for summary judgment.

The circuit court awarded summary judgment to the State after finding the cancellation valid but reserved decision on whether the plaintiff was entitled to a refund of the rent installment paid on February 17, 1976. Subsequently, the State was also granted summary judgment with respect thereto, and the plaintiff perfected a timely appeal to this court.

## II.

The primary issue before us is whether HAPA's mandates apply when the Board of Land and Natural Resources acts to cancel a lease agreement covering a tract of public land. Sharma argues the Board should have afforded him notice of the contemplated action and a full hearing prior to effectuating the cancellation.[4] Yet HAPA does not bind an agency in all of its actions or functions, and we conclude the cancellation of the lease in question was not subject to the panoply of procedures outlined in HRS Chapter 91.

---

[4] HRS § 91-9 provides in part:

Contested cases; notice; hearing; records. (a) In any contested case, all parties shall be afforded an opportunity for hearing after reasonable notice.

(b) The notice shall include a statement of:

(1) The date, time, place, and nature of hearing;

(2) The legal authority under which the hearing is to be held;

(3) The particular sections of the statutes and rules involved;

(4) An explicit statement in plain language of the issues involved and the facts alleged by the agency in support thereof; provided, that if the agency is unable to state such issues and facts in detail at the time the notice is served, the initial notice may be limited to a statement of the issues involved, and thereafter upon application a bill of particulars shall be furnished;

(5) The fact that any party may retain counsel if he so desires and the fact that an individual may appear on his own behalf, or a member of a partnership may represent the partnership, or an officer or authorized employee of a corporation or trust or association may represent the corporation, trust, or association.

(c) Opportunities shall be afforded all parties to present evidence and argument on all issues involved.

That a State agency like the Board of Land and Natural Resources "must conform to the requirements of HAPA when acting in either a rule making capacity (quasi-legislative), or in the adjudication of a contested case (quasi-judicial)" is unquestionable. *Town v. Land Use Commission,* 55 Haw. 538, 545, 524 P.2d 84, 89 (1974); *see also Life of the Land v. West Beach Development Corp.,* 63 Haw. 529, 531, 631 P.2d 588, 590 (1981); *Ah Ho v. Cobb,* 62 Haw. 546, 550, 617 P.2d 1208, 1211 (1980); *Ainoa v. Unemployment Compensation Appeals Division,* 62 Haw. 286, 290, 614 P.2d 380, 383 (1980); *Aguiar v. Hawaii Housing Authority,* 55 Haw. 478, 482, 522 P.2d 1255, 1259 (1974). That an administrative agency is charged with duties other than rule making or adjudication also is not open to doubt. *See generally Kailua Community Council v. City & County,* 60 Haw. 428, 431, 591 P.2d 602, 604 (1979); J. Hart, *An Introduction to Administrative Law* 140 (1946).

For one, an agency must deal with matters related to its internal management. And where no "private rights of or procedures available to the public" are affected, decisions on these matters are not subject to HAPA's restraints on the agency's rule-making power. HRS § 91-1(4);[5] *Ah Ho v. Cobb,* 62 Haw. at 552, 617 P.2d at 1212; *Holdman v. Olim,* 59 Haw. 346, 355, 581 P.2d 1164, 1170 (1978).

The appellant in *Holdman v. Olim,* a female visitor to a state correctional facility, challenged a directive governing the dress of visitors to the facility. One of her contentions was that the order issued by prison authorities was void for want of promulgation as a rule pursuant to HAPA's provisions. Since

---

[5] HRS § 91-1(4) reads:

"Rule" means each agency statement of general or particular applicability and future effect that implements, interprets, or prescribes law or policy, or describes the organization, procedure, or practice requirements of any agency. The term does not include regulations concerning only the internal management of an agency and not affecting private rights of or procedures available to the public, nor does the term include declaratory rulings issued pursuant to section 91-8, nor intra-agency memoranda.

we found "no private right of or procedure available to the public . . . [was] involved," the dispositive question in our view was "whether the directive concerned only the internal management of the prison." *Id.* at 355, 581 P.2d at 1170. What "constitute[d] matters of internal management," we observed, had not been "clearly spelled out." *Id.* But we further noted HAPA's legislative history "suggest[ed] that the 'custodial management' of public property is primarily a matter of internal management." *Id.*[6] Our conclusion on the foregoing issue was stated in these terms:

> We think that the internal management of an agency necessarily includes the custodial management of public property entrusted to the agency. "The State, no less than a private owner of property, has power to preserve the property under its control for the use to which it is lawfully dedicated." *Adderley v. Florida,* 385 U.S. 39, 47 (1966). Regulation of the access of individuals to a public facility under the custody of an agency, at least where imposed for the security of the facility, thus concerns the internal management of the agency.

*Id.* at 355-56, 581 P.2d at 1170.

In *Ah Ho v. Cobb,* the appellants argued an agreement for the "rental of excess transmission capacity in the [Molokai Irrigation] System" by the Kaluakoi Corporation, 62 Haw. at 547, 617 P.2d at 1210, was "a rule because it prescribe[d] new agency policy." *Id.* at 550, 617 P.2d at 1211. However, we

---

[6] The court's opinion at this point referred to Hse. Stand. Comm. Rep. No. 8, in 1961 House Journal, at 653, which reads in part:

The definition of "rule" is the same as Subsection 1(2) of the Revised Model Act. The definition as worded makes it applicable to a single party, thus making the definition more closely comparable to that of the Federal Act. It is intended by this definition of "rule" that regulations and policy prescribed and used by an agency principally directed to its staff and its operations are excluded from the definition. In this connection your Committee considers matters relating to the operation and management of state and county penal, correctional, welfare, educational, public health and mental health institutions, operation of the National Guard, the custodial management of the property of the state or county or of any agency primarily a matter of "internal management" as used in this definition.

1961 House Journal, at 656.

concluded the contract entered into by the Board for the carriage of water through public pipelines and facilities under its control was a matter of "internal management." And the "internal management of an agency," we reiterated, "necessarily includes the custodial management of public property entrusted to the agency." *Id.* at 552, 617 P.2d at 1212 (quoting *Holdman v. Olim*, 59 Haw. at 355-56, 581 P.2d at 1170). Consequently, we did not deem compliance with HAPA's provisions covering the adoption of rules obligatory. *Id.* at 553, 617 P.2d at 1213.

### B.

Unlike the appellants in *Holdman* and *Ah Ho*, Sharma advances no claim that the Board was engaged in rule making when it took the action adverse to his interest. He maintains the agency action was vitiated by a failure to follow the contested-case procedures delineated in HRS § 91-9. The lack of timely and legally sufficient notice of the hearing at which the Board voted to cancel the lease, he claims, effectively deprived him of an opportunity to defend his interest at a trial-type hearing.

Notice and a trial-type hearing, of course, are essential in "any contested case" since HRS § 91-9 demands that "reasonable notice" be given and "opportunities to present evidence and argument on all issues" be afforded parties thereto. Yet, this statutory mandate does not apply in every situation where someone's interest may be adversely affected by agency action. For a "contested case" within the purview of HAPA is "a proceeding in which the legal rights, duties, or privileges of specific parties *are required by law* to be determined after an opportunity for agency hearing." HRS § 91-1(5) (emphasis supplied).

We turn, therefore, to the statutory provisions governing the leasing of public land, HRS Chapter 171, to determine whether the Board was obligated thereunder to afford Sharma an opportunity for agency hearing before cancelling his lease. To be sure, HRS § 171-20 calls for notice to the lessee before the Board of Land and Natural Resources moves to terminate a lease of public land. But the requisite notification is that of

default,[7] and there is no suggestion that a hearing must be conducted. Rather, the agency is expressly empowered by HRS § 171-39 to "terminate the lease or tenancy and take possession of the leased land, without demand or previous entry and without legal process" after the notice of a breach is delivered.[8] This stands to reason inasmuch as the Board as lessor would hardly be adjudicating a contested case—it would be functioning as a landlord.

Here, the agency was acting as a landlord and exercising powers granted by HRS § 171-39 that it had with foresight also reserved unto itself in the lease document.[9] It thus had the same

---

[7] HRS § 171-20 provides:

Notice of breach or default. Except as otherwise specifically provided in this chapter, in the event of a breach or default of any term, covenant, restriction, or condition of any lease, patent, license, agreement, or other instrument heretofore or hereafter issued under this chapter, the board of land and natural resources shall deliver a written notice of the breach or default by personal service or by registered or certified mail to the party in default and to each holder of record having any security interest in the land covered by or subject to the lease, patent, license, agreement, or other instrument, making demand upon the party to cure or remedy the breach or default within sixty days from the date of receipt of the notice; provided that where the breach involves a failure to make timely rental payments pursuant to the lease, patent, license, agreement, or other instrument heretofore or hereafter issued under this chapter, the written notice shall include a demand upon the party to cure the breach within less than sixty days, but not less than five business days, after receipt of the notice. Upon failure of the party to cure or remedy the breach [or] default within the time period provided herein or within such additional period as the board may allow for good cause, the board may, subject to section 171-21 exercise such rights as it may have at law or as set forth in the lease, patent, license, agreement, or other instrument.

[8] HRS § 171-39 reads:

Leases; forfeiture. Upon the violation of any condition or term of any lease to be observed or performed by the lessee or tenant, the board of land and natural resources shall, after the notice of default as provided in section 171-20, and subject to the rights of each holder of record having a security interest as provided in section 171-21, terminate the lease or tenancy and take possession of the leased land, without demand or previous entry and without legal process, together with all improvements placed thereon and shall retain all rent paid in advance as damages for the violations.

[9] Paragraph Two of General Lease No. S-4378 states:

*Breach.* That time is of the essence of this agreement and if the Lessee shall fail to yield or pay such rent or any part thereof at the times and in the manner aforesaid, or shall become bankrupt, or shall abandon the said premises, or if this lease and said premises shall be attached or otherwise be taken by operation of law, or if any assignment be made of the Lessee's property for the benefit of creditors, or

right as any prudent landlord to terminate a tenancy upon a tenant's non-performance. *Cf. United States v. Blumenthal,* 315 F.2d 351, 353 (3d Cir. 1963) (The United States as a landlord acts "in its proprietary rather than its governmental capacity . . . [and] has the same absolute right as any other landlord to terminate a monthly lease by giving appropriate notice"); *Smith v. Davis,* 323 U.S. 111, 113-14 (1944) (In general the United States as a contractor must be treated as other contractors under analogous situations); *Lynch v. United States,* 292 U.S. 571, 579 (1934) ("When the United States enters into contract relations, its rights and duties therein are governed generally by the law applicable to contracts between private individuals.").

Sharma nevertheless argues he was denied due process by the summary termination of his tenancy. We do not find the argument persuasive, for the lease "provision with reference . . . [thereto] . . . [was] valid and binding upon . . . [him] in the same manner as though the lessor had been a private person." *Brand v. Chicago Housing Authority,* 120 F.2d 786, 788 (7th Cir. 1941); *see also Housing Authority of the City of Pittsburgh v. Turner,* 201 Pa. Super. 62, 67, 191 A.2d 869, 871 (1963). And he was afforded ample opportunity to demonstrate to the trial court that he was not actually in default or that the State had breached the agreement. No due process violation appears in the record.

---

shall fail to observe and perform any of the covenants, terms and conditions herein contained and on its part to be observed and performed, and such failure shall continue for a period of more than sixty (60) days after delivery by the Lessor of a written notice of such breach or default by personal service, registered mail or certified mail to the Lessee at its last known address and to each mortgagee or holder of record having a security interest in the demised premises, the Lessor may, subject to the provisions of Section 171-21, Hawaii Revised Statutes, at once re-enter such premises or any part thereof, and upon or without such entry, at its option, terminate this lease without prejudice to any other remedy or right of action for arrears of rent or for any preceding or other breach of contract; and in the event of such termination, all buildings and improvements thereon shall remain and become the property of the Lessor.

There being no question about Sharma's failure to abide by the terms and conditions of General Lease No. S-4378 and the State's right to retain the rent payment pursuant to HRS § 171-39, we affirm the awards of summary judgment to the State.

*Paul A. Tomar* for appellant.

*Edwin P. Watson,* Deputy Attorney General, for appellees.