JOHN DOE, et al., Plaintiffs-Appellants *v.* ANDREW CHANG, et al., Defendants-Appellees

NO. 6261

JUNE 6, 1977

RICHARDSON, C.J., KOBAYASHI, OGATA, MENOR AND KIDWELL, JJ.

*Per Curiam.* This is an appeal by three welfare recipient plaintiffs from an order denying injunctive relief from investigation and prosecution for welfare fraud, in an action against officers of the Department of Social Services and Housing (DSSH). We affirm.

The action was maintained by two individuals identified only by the pseudonyms John Doe and Jane Doe,[1] who were being investigated by DSSH for alleged welfare fraud, and one Cheryl Soto[2] who, according to her affidavit in the record, was informed that she was suspected of welfare fraud and had seen a penal summons charging her with that offense.

---

[1] Plaintiff Jane Doe is identified as Jane Coe in various of the pleadings. Remarking in oral argument on the inconsistent references, plaintiffs' counsel represented that the Coe pseudonym was adopted to avoid the appearance that Jane Doe was the wife of the party identified as John Doe.

[2] Cheryl Soto is the actual name of the party.

Plaintiffs purported in their briefs to bring the lawsuit on behalf of themselves and all persons similarly situated, namely the class of persons who as residents of Hawaii had received, were receiving or would receive public assistance and had been threatened with, investigated for or prosecuted because of alleged welfare fraud. There was, however, never any determination of the class. In oral argument before the court, plaintiffs' counsel conceded that the instant litigation was not a class action. Therefore, this court does not treat the individual plaintiffs as representatives of any wider group.

The heart of plaintiffs' position is that the State welfare fraud procedures are invalid without rules and regulations promulgated in accordance with the Hawaii Administrative Procedure Act. Plaintiffs contend that an investigation of possible violations by them of HRS § 346-34 (welfare fraud) cannot be engaged in lawfully by DSSH in the absence of properly adopted rules governing the manner in which such investigation shall be conducted by the personnel of the department. The steps of the argument are: HRS § 346-14(9) requires that DSSH "[m]ake such rules governing the procedure in . . . investigations . . . as may be necessary or proper to carry out this chapter"; an agency rule is not valid unless it has been adopted as required by Chapter 91 (administrative procedure); the manual of instructions to DSSH personnel concerning welfare fraud investigations (Hawaii Public Welfare Manual § 2550-2558) was not adopted as a rule in accordance with Chapter 91; the personnel of DSSH proceeded in accordance with an invalid rule, and therefore unlawfully, in conducting the investigation of plaintiffs. The argument must fail if rules adopted pursuant to Chapter 91 are not "necessary or proper" to carry out Chapter 346 and if the manual of instructions is not a rule requiring adoption pursuant to Chapter 91 to permit personnel of DSSH to resort to it for guidance in conducting investigations. Each of these negative conclusions is required by the definition of "rule" contained in HRS § 91-1(4), which reads:

"Rule" means each agency statement of general or particular applicability and future effect that im-

plements, interprets, or prescribes law or policy, or describes the organization, procedure, or practice requirements of any agency. The term does not include regulations concerning only the internal management of an agency and not affecting private rights of or procedures available to the public, nor does the term include declaratory rulings issued pursuant to section 91-8, nor intra-agency memoranda.

We note that "rule", as used in Chapter 91, does not include "regulations concerning only the internal management of an agency and not affecting private rights of or procedures available to the public." Clearly, the term must be given the same meaning when used in Chapter 346. It follows that the adoption by DSSH of rules having the force and effect of law, to govern investigations, is not mandated by HRS § 346-14(9) if the operating requirements of the department are satisfied by regulations concerning only its internal management and not affecting private rights of or procedures available to the public.

The manual of instructions in issue here falls into the described class of regulations. The only persons purporting to be instructed or ordered thereby are the personnel of the department. The manual does not define the circumstances under which welfare recipients, or others not members of the department personnel, shall be granted or denied benefits. It does not command the public to do anything, prohibit the public from doing anything or declare the rights of the public in any respect. It does not make any procedures available to the public. We find it difficult to hypothesize a stronger example of the internal regulation contemplated by HRS § 91-1(4). No suggestion is made that anything more than the present manual of instructions is "necessary or proper" to carry out Chapter 346. We conclude that plaintiffs have failed to show non-compliance by the defendants with HRS § 346-14(9), and have failed to sustain the claim for relief which they assert under Chapter 91.[3]

---

[3] *Otani v. Contractors License Board*, 51 Haw. 673, 466 P.2d 1009 (1970), and *Aguiar v. Hawaii Housing Authority*, 55 Haw. 478, 522 P.2d 1255 (1974), cited by plaintiffs, dealt with rules which defined rights of persons dealing with the agency.

Plaintiffs also seek to enjoin the conduct of any investigatory interviews by personnel of the department without the warnings required by *Miranda v. Arizona*, 384 U.S. 436 (1966). We have not been referred to any decisions which have given effect to the policy of this exclusionary rule by enjoining conduct, as well as excluding evidence. However, we need not consider whether the *Miranda* rule is capable of this extension. *Miranda*, and our enunciation of the rule as a requirement of the Hawaii constitution, *State v. Santiago*, 53 Haw. 254, 492 P.2d 657 (1971), applies only where an individual is being subjected to custodial interrogation, which we have defined as "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." *State v. Kalai*, 56 Haw. 366, 368, 537 P.2d 8, 11 (1975).

Plaintiffs have not alleged any deprivation of their freedom of action in connection with the investigatory interrogations complained of here, other than the constraint imposed by their assumption that cooperation with the questioners was a condition of continued welfare benefits, nor have they alleged that they were informed that failure to provide such cooperation would result in any disadvantage to them. "Such a noncustodial situation is not converted to one in which *Miranda* applies simply because a reviewing court concludes that, even in the absence of any formal arrest or restraint on freedom of movement, the questioning took place in a 'coercive environment.' . . . *Miranda* warnings are required only where there has been such a restriction on a person's freedom as to render him 'in custody.' It was *that* sort of coercive environment to which *Miranda* by its terms was made applicable, and to which it is limited." *Oregon v. Mathiason*, U.S. , 97 S.Ct. 711, 714 (1977). We conclude that the *Miranda* rule has no applicability.

Affirmed.

*Stanley E. Levin*, Legal Aid Society of Hawaii, for Plaintiffs-Appellants.

*Michael A. Lilly*, Deputy Attorney General, for Defendants-Appellees.