**In the Interest of DOE,** Born on November 14, 1973, Minor–
Appellant

NO. 15951

(FC–J NO. 22196)

DECEMBER 29, 1992
Amended by Order Filed December 31, 1992

BURNS, C.J., HEEN AND WATANABE, JJ.

*Per Curiam.* The Family Court of the Third Circuit entered a
decree adjudging that Doe, a minor, was a law violator within the
purview of Hawai'i Revised Statutes (HRS) § 571–11(1) (1985)

for, *inter alia*, driving under the influence of intoxicating liquor (DUI) in violation of HRS § 291–4(a)(1) (1985).[1] On appeal, Doe contends that the family court erred in denying Doe's motion to suppress evidence of the results of the field sobriety tests administered to him because the procedures regarding those tests had not been adopted pursuant to rule–making directives of HRS Chapter 91, the Hawai'i Administrative Procedure Act (HAPA), by the Hawai'i County Police Department (HCPD). We affirm.

## FACTS

In the early morning hours of July 20, 1991, Doe was arrested and thereafter charged with (1) DUI; (2) driving through a red light in violation of HRS § 291C–32(a)(3A) (1985); and (3) driving with an expired safety sticker in violation of HRS § 286–25 (1985). Doe filed a motion to suppress "any and all evidence relating to the field sobriety tests and evidence derived as a result thereof[.]" Record at 15. On January 8, 1992, the family court held an evidentiary hearing on Doe's motion. The testimony of HCPD

---

[1] At the time of Doe's arrest, Hawai'i Revised Statutes (HRS) § 291–4(a)(1) provided as follows:

> **§ 291–4 Driving under influence of intoxicating liquor.** (a) A person commits the offense of driving under the influence of intoxicating liquor if:
>
> (1)  The person operates or assumes actual physical control of the operation of any vehicle while under the influence of intoxicating liquor[.]

Effective August 1, 1991, HRS § 291–4(a)(1) (Supp. 1991) reads as follows:

> **§ 291–4 Driving under the influence of intoxicating liquor.** (a) A person commits the offense of driving under the influence of intoxicating liquor if:
>
> (1)  The person operates or assumes actual physical control of the operation of any vehicle while under the influence of intoxicating liquor, meaning that the person concerned is under the influence of intoxicating liquor in an amount sufficient to impair the person's normal mental faculties·or ability to care for oneself and guard against casualty[.]

Officer Martin Ellazar (Officer Ellazar) established the following facts.

At about 12:15 a.m. on July 20, 1991, Officer Ellazar observed Doe drive his vehicle through the intersection of Route 19 and Pukihae Street in South Hilo against a red traffic light. Officer Ellazar activated his blue light and stopped Doe. As Officer Ellazar approached Doe's vehicle from the rear, Doe got out of his vehicle to meet the officer. Officer Ellazar observed that the safety sticker on Doe's vehicle had expired and advised Doe of this violation. As Doe stood a foot away from him, Officer Ellazar detected "a very strong odor of an alcoholic beverage on his breath." Trial Transcript at 9. The officer then advised Doe that he would administer field sobriety tests on Doe.

Prior to administering the field sobriety tests, Officer Ellazar asked Doe if he had any physical impairments. Upon receiving a negative reply, Officer Ellazar proceeded to administer to Doe five different field sobriety tests: (1) Horizontal Gaze Nystagmus test; (2) Walk–and–Turn test; (3) One–Leg Stand test; (4) Finger–to–Nose test; and (5) Modified Rhomberg test (with heels together and hands down at his side, subject closes his eyes, tilts his head back, and counts backward). Officer Ellazar testified that Doe failed all five tests, so he arrested Doe for DUI.

Officer Ellazar also testified that he had been a police officer since 1985, he had a minimum of eight hours of classroom training and another eight hours of classroom training later relating to administering field sobriety tests. HCPD personnel conducted these training sessions. Officer Ellazar has administered field sobriety tests since becoming a police officer in 1985. He stated that field sobriety tests are routinely administered to a driver suspected of DUI, unless the driver is physically unable or refuses to undergo such tests. The HCPD has printed "Standardized Field Sobriety Tests Work Sheet" forms used by its police officers. State's Exhibit 1. These forms contain instructions to be given

to the driver being administered the tests and spaces to score the results for each of the five field sobriety tests. According to Officer Ellazar, based on his knowledge, "there were no administrative rules or regulations governing the administration of the field sobriety tests." Record at 58.

At the close of the hearing, the family court denied Doe's motion to suppress. Thereafter, the jury–waived trial of the case commenced. The parties stipulated that the testimony and other evidence in the suppression hearing be made a part of the trial on the merits. The parties further stipulated that (1) after Doe's arrest, he was transported to the police station where he consented to take a breath test; and (2) the intoxilyzer breath test administered to Doe at 1:45 a.m. indicated a blood alcohol concentration of 0.091 percent. The family court adjudged that Doe was a law violator with respect to DUI,[2] driving through a red light, and driving with an expired safety sticker.

After the denial of his motion for reconsideration, Doe timely appealed.[3]

---

[2] The family court found and concluded as follows:

    9. Although the Officer did not witness erratic driving and only saw the Minor go through a red light, it is not necessary for the police to witness erratic driving to prove a charge of driving under the influence of intoxicating liquor.

    10. Minor's going through the red light, the strong odor of alcohol and the failing of the field sobriety tests, and the results of the Minor's intoxilyzer test of .091 are all competent evidence to be considered in determining whether the Minor had been driving while under the influence of intoxicating liquor.

    11. Under Section 291–5, Hawai'i Revised Statutes, as amended, the Court is satisfied that the elements of the offense of Driving Under the Influence of Intoxicating Liquor have been proven beyond a reasonable doubt.

Record at 62.

[3] Doe's appeal relates only to the family court's adjudication that he violated HRS § 291–4(a) (driving under the influence of intoxicating liquor).

## DISCUSSION

A state agency "must conform to the requirements of HAPA when acting in . . . a rule making capacity (quasi–legislative)[.]" *Town v. Land Use Comm'n*, 55 Haw. 538, 545, 524 P.2d 84, 89 (1974); *see also Sharma v. State*, 66 Haw. 632, 637, 673 P.2d 1030, 1033 (1983), *cert denied*, 469 U.S. 836, 105 S. Ct. 131, 83 L. Ed. 2d 72 (1984). HAPA defines "agency" and "rule" as follows:

> (1) "Agency" means each state or county board, commission, department, or officer authorized by law to make rules or to adjudicate contested cases, except those in the legislative or judicial branches.
>
> * * *
>
> (4) "Rule" means each agency statement of general or particular applicability and future effect that implements, interprets, or prescribes law or policy, or describes the organization, procedure, or practice requirements of any agency. The term does not include regulations concerning only the internal management of an agency and not affecting private rights of ~~or~~ procedures available to the public, nor does the term include declaratory rulings issued pursuant to section 91–8, nor intra–agency memoranda.

* * *

HRS § 91–1 (1985).

Doe argues that (1) HCPD is an "agency" as defined in HAPA; (2) HCPD's field sobriety testing procedures are "rules" pursuant to HAPA; (3) because HCPD failed to conform to HAPA's rule–making requirements in adopting the field sobriety testing procedures, the procedures are invalid and unenforceable; (4) consequently, the family court should have suppressed the field sobriety test results which led to Doe's arrest for DUI; (5) without

the field sobriety test results, there was insufficient evidence that Doe was guilty of DUI beyond a reasonable doubt; and (6) therefore the family court's adjudication that Doe was a law violator for DUI must be reversed.

The HCPD is a county department authorized by law to make rules. Charter of the County of Hawai'i sec. 7–2.3 (1980) (the police commission is authorized to adopt rules). We therefore agree that the HCPD is an "agency" required to conform to HAPA's rule–making requirements. However, we do not agree that the HCPD's field sobriety testing procedures constitute "rules" subject to HAPA's rule–making requirements.

HAPA itself excludes "regulations concerning only the internal management of an agency and not affecting private rights of or procedures available to the public" from its rule–making restraints. *See Holdman v. Olim*, 59 Haw. 346, 355, 581 P.2d 1164, 1170 (1978) (a directive controlling the dress of visitors to the Oahu State Prison). We conclude that the HCPD's field sobriety testing procedures fall within such exclusion and are not subject to HAPA's rule–making requirements.

In *Doe v. Chang*, 58 Haw. 94, 564 P.2d 1272 (1977), three welfare recipient plaintiffs sought injunctive relief from investigations and prosecutions of welfare fraud on the ground that the State welfare fraud procedures were invalid because the manual of instructions concerning welfare fraud investigations was not adopted in accordance with HAPA's rule–making requirements. The Hawai'i Supreme Court disagreed with the plaintiffs, holding that the manual of instructions in question constituted "internal regulation contemplated by HRS § 91–1(4)." 58 Haw. at 96, 564 P.2d at 1273.

In *State v. Fedak*, 9 Haw. App. 98, 825 P.2d 1068 (1992), the Honolulu Police Department's (HPD) regulation that established the department's drunk driving prevention program, which included the authorization of sobriety roadblocks, was at issue. A DUI defendant, who had been stopped at a sobriety roadblock,

challenged the HPD regulation in question on the ground that it had not been promulgated in accordance with HAPA. This court held that the HPD regulation was an internal regulation within the definition of HRS § 91–1(4), stating:

[A]lthough HPD sobriety roadblocks unquestionably impinge on a driver's freedom of movement, [the HPD regulation's] procedures are aimed at prescribing and controlling the police officer's activities in order to minimize the intrusion on the driver's rights.

9 Haw. App. at 101, 825 P.2d at 1070.

The record in this case discloses that, like in *Doe v. Chang*, *supra*, the field sobriety testing procedures established by the HCPD were instructional in nature directed only to HCPD police officers. The procedures instructed the officers how to administer field sobriety tests to drivers reasonably believed to have been DUI, after they were properly stopped and ordered out of their cars.[4] Also, although field sobriety tests intrude on drivers' rights as do sobriety roadblocks, HCPD's field sobriety testing procedures are aimed at assuring the proper and correct methods of administering the tests to drivers.

Consequently, those testing procedures concern only the "internal management" of the HCPD and do not affect "private rights of or procedures available to the public" within the meaning of HAPA.

## CONCLUSION

Accordingly, we hold that the HCPD's field sobriety testing procedures are not "rules" subject to the rule–making requirements of HAPA. Therefore, the family court did not err in denying Doe's motion to suppress evidence.

---

[4] *State v. Kim*, 68 Haw. 286, 711 P.2d 1291 (1985), provides under what circumstances a driver may be ordered out of a car after a traffic stop.

Affirmed.

*Theodore Y.H. Chinn*, Deputy Public Defender, on the brief for minor–appellant.

*Gilbert M. Halpern*, Deputy Prosecuting Attorney, on the brief for plaintiff–appellee.