137 P.3d 373

**STATE of Hawai'i, Plaintiff–Appellant,**

**v.**

**Gary K. CLAUNCH, Defendant–Appellee.**

**No. 26367.**

Intermediate Court of Appeals of Hawai'i.

May 22, 2006.

Tracy Murakami, Deputy Prosecuting Attorney, County of Kaua'i, on the briefs, for Plaintiff–Appellant.

Phyllis J. Hironaka, Deputy Public Defender, on the briefs, for Defendant–Appellee.

BURNS, C.J., FOLEY and FUJISE, JJ.

Opinion of the Court by FOLEY, J.

Plaintiff–Appellant State of Hawai'i (State) appeals from the "Findings of Fact, Conclusions of Law, Decision and Order Granting Defendant Gary K. Claunch's Motion to Suppress, Filed on June 26, 2003," filed December 22, 2003 in the District Court of the Fifth Circuit [1] (district court).

The district court ruled that Kauai Police Department General Order (GO) 2000–01 establishing authority and procedures at sobriety checkpoints did not comply with publication requirements set forth in Hawaii Revised Statutes (HRS) Chapter 91, Administrative Procedure, and was therefore illegal. We disagree, vacate, and remand.

## I.

### FINDINGS OF FACT AND CONCLUSIONS OF LAW

■ The unchallenged and binding Findings of Fact of the district court are as follows [2]:

1. The Honorable Trudy K. Senda presided.

2. Unchallenged findings of fact of the lower court are binding on the appellate court. *Okada*

1. During the late afternoon and/or early evening hours of Friday, April 25, 2003, Sergeant Mark Scribner and other officers of the Kauai Police Department (hereinafter "KPD") set up a sobriety checkpoint on Olohena Road, in the vicinity of Kapaa Middle School (hereinafter "Checkpoint"). The Checkpoint was administered in accordance with KPD General Order 2000–01, "DUI Sobriety Checkpoints."

2. Actual "roadblock" operations commenced at the Checkpoint at approximately 6:15 p.m. and were terminated at 8:00 pm. Officers manning the Checkpoint had been instructed to stop all vehicles approaching the Checkpoint.

3. During the Checkpoint operations that evening, five uniformed KPD officers were present.

4. At approximately 7:30 p.m. that evening, Defendant [Gary K. Claunch] entered the Checkpoint while operating a 1989 Dodge pick-up truck, license plate number KJB 621.

5. KPD Officer Joseph Kaauwai, Jr. observed what he believed to be indicia of Defendant's alcohol intoxication, and an investigation for OVUII ("Operating A Vehicle Under The Influence Of An Intoxicant") was initiated.

6. Defendant was later arrested and charged with OVUII.

7. General Order 2000–01 ("GO 2000–01") of the Kauai Police Department, dealing with DUI Sobriety Checkpoints, was issued on June 20, 2000 and bore an effective date of "Immediately."

8. According to KPD Lt. Frederick DeBusca, a general order is drafted by the research and development office staff and is intended to serve as a general instruction to officers; a general order is "an instruction to tell

*Trucking Co., Ltd. v. Bd. of Water Supply,* 97 Hawai'i 450, 458, 40 P.3d 73, 81 (2002).

officers what to do" in specified situations.

9. Before a general order is signed/approved by the chief of police for department wide application, it is first reviewed by the district commander and union representatives.

10. As with other general orders, GO 2000–01 was drafted by the research and development office staff, reviewed/approved by the union and district commander, and finally signed by the police chief for department wide application.

11. A general order may be but is not always routed to the Police Commission for information and/or input.

12. According to Lt. DeBusca, GO 2000–01 was neither published in any newspaper of general circulation nor placed on any agenda for public hearing.

13. GO 2000–01 was not adopted or approved by the Kauai Police Commission, Kauai County Council or Mayor.

14. GO 2000–01 provides instruction to KPD officers in the set up and operation of sobriety checkpoints at which members of the general public will be stopped. . . .

15. The Kauai Police Department did not provide at least thirty (30) days notice for a public hearing on GO 2000–01 prior to its adoption.

16. The procedure by which GO 2000–01 was adopted did not afford all interested persons an opportunity to submit data, views, or arguments, orally or in writing, for consideration before adoption of the general order.

17. There is no evidence of any rule, order, ordinance or other document, other than GO 2000–01, which currently establishes and/or implements intoxicant control checkpoints in the County of Kauai.

18. In the absence of any other rule, order, ordinance or other document to establish and/or implement intoxicant control checkpoints in the County of Kauai, GO 2000–01 must be considered as the "rule(s)" which specify the procedures to be followed in carrying out the intoxicant control checkpoint program in the County of Kauai.[3]

The State challenged the second sentence of Finding of Fact 14, which reads as follows:

14. ... GO 2000–01 is therefore a regulation or directive which affects private rights of or procedures available to the public.

The unchallenged Conclusions of Law of the district court are as follows:

1. Section 291E–19 of the Hawaii Revised Statutes provides authorization for county police departments in the State of Hawaii to establish and implement intoxicant control roadblock programs in accordance with the minimum standards and guidelines provided in Section 291E–20, HRS.

2. The chief of police in any county establishing an intoxicant control roadblock program pursuant to Sec. 291E–19 shall specify the procedures to be followed in carrying out the program in rules adopted under chapter 91, HRS, Sec. [2]91E–19.

3. The Kauai Police Department is an "agency" within the meaning and coverage of Section 91–1(1) of the Hawaii Revised Statutes.

4. Section 91–1(4), HRS, provides:

"Rule" means each agency statement of general or particular applicability and future effect that implements, interprets, or prescribes law or policy, or describes the organization, procedure, or practice requirements of any agency. The term does not include regulations concerning only the internal management of an agency and not affecting private rights of or procedures available to the public, nor does the term include declaratory rulings issued pursuant to section 91–8, nor intra-agency memoranda.

---

**3.** Findings of Fact 19–21, not listed above, noted this court's discussion in *State v. Fedak*, 9 Haw. App. 98, 825 P.2d 1068 (1992).

5. Section 91–3, HRS, sets forth the procedure for adoption, amendment or repeal of rules. Specifically, Sec. 91–3(a)(1) requires, prior to the adoption of any rule authorized by law, or the amendment or repeal thereof, that the agency give at least thirty (30) days' notice for a public hearing. Sec. 91–3(a)(2) mandates that the agency full [sic] consider all written and oral submissions of interested persons respecting the proposed rule (or rule change).

6. The adoption, amendment or repeal of any rule by any county agency shall be subject to the approval of the mayor of the county. Sec. 91–1(c), HRS.

7. The Kauai Police Department was required, under Section 291E–19, HRS, to adopt rules, under Chapter 91, which specify the procedures to be followed in carrying out its intoxication control checkpoint program.

The State challenges the district court's Conclusions of Law 8 and 9, which read as follows:

8. Although entitled a "General Order" rather than a rule or rules, GO 2000–01 is the only document which purports to establish an intoxication control checkpoint program in the County of Kauai and to set forth the procedures to be followed in carrying out said program in the County of Kauai. As such, adoption of GO 2000–01 required compliance with the provisions of Chapter 91, including notice and public hearing prior to adoption of a rule.

9. The Kauai Police Department failed to adhere to and/or comply with the requirements of Chapter 91 in adopting GO 2000–01, and therefore, GO 2000–01 was not validly adopted.

## II.

### STATE ROADBLOCK REQUIREMENTS AND PROCEDURES STATUTES

The statutes at issue in this case, HRS §§ 291E–19 (Supp.2005) and 291E–20 (Supp.2005), setting forth the requirements and procedures for intoxicant control roadblocks, are as follows:

**§ 291E–19 Authorization to establish intoxicant control roadblock programs.** The police departments of the respective counties may establish and implement intoxicant control roadblock programs in accordance with the minimum standards and guidelines provided in section 291E–20. The chief of police in any county establishing an intoxicant control roadblock program pursuant to this section shall specify the procedures to be followed in carrying out the program in rules adopted under chapter 91; provided that the procedures shall be in conformity with and not more intrusive than the standards and guidelines described in section 291E–20. In the case of internal police standards that do not fall within the definition of "rule" under section 91–1(4), failure to comply scrupulously with such internal police procedures shall not invalidate a roadblock that otherwise meets the minimum statutory criteria provided in section 291E–20.

**§ 291E–20 Minimum standards for roadblock procedures.** (a) Every intoxicant control roadblock program shall:

(1) Require that all vehicles approaching roadblocks be stopped or that certain vehicles be stopped by selecting vehicles in a specified numerical sequence or pattern;

(2) Require that roadblocks be located at fixed locations for a maximum three-hour period;

(3) Provide for the following minimum safety precautions at every roadblock:

(A) Proper illumination;

(B) Off-road or otherwise safe and secure holding areas for vehicles involved in any roadblock stop;

(C) Uniformed law enforcement officers carrying proper identification;

(D) Adequate advance warning of the fact and purpose of the roadblocks, either by sign posts, flares, or other alternative methods;

(E) Termination of roadblocks at the discretion of the law enforcement officer in charge where traffic congestion would otherwise result; and

(4) Provide for a sufficient quantity and visibility of uniformed officers and official vehicles to ensure speedy compliance with the purpose of the roadblocks and to move traffic with a minimum of inconvenience.

(b) Nothing in this section shall prohibit the establishment of procedures to make roadblock programs less intrusive than required by the minimum standards provided in this section.

### III.

### KAUAI POLICE DEPARTMENT GO 2000–01 (DUI SOBRIETY CHECKPOINTS)

The Kauai Police Department GO 2000–01 (DUI Sobriety Checkpoints) at issue in this case reads as follows:

**I. Purpose**

To establish authority and procedures to be used at Driving Under the Influence checkpoints.

**II. Authority**

**A. § 286–162.5 Authorization to establish intoxication and drug control roadblock programs.**

The police departments of the respective counties are authorized to establish and implement intoxication and drug control roadblock programs in accordance with the minimum standards and guidelines provided in section 286–162.6. The chief of police in any county establishing an intoxication and drug control roadblock program pursuant to this section shall specify the procedures to be followed in carrying out the program in rules adopted under chapter 91; provided that the procedures shall be in conformity with and not more intrusive than the standards and guidelines described in section 286–162.6.

**III. *Every intoxication and drug control roadblock program shall:***

Require either that all motor vehicles, or mopeds, or both, approaching roadblocks be stopped, or that certain motor vehicles, or mopeds, or both, be stopped by selecting motor vehicles, or mopeds, or both, in a specified numerical sequence or pattern.

Sequence or pattern of motor vehicles, or mopeds, or both to be stopped, will be determined by the supervisor in charge of the roadblock.

**IV. Require that roadblocks be located at fixed locations for a maximum of three-hour period.**

The supervisor in charge of roadblock shall determine the location of the roadblock and shall have the authority to move the location of the roadblock.

**V. Provide for the following minimum safety precautions at every roadblock:**

A. Proper illumination[.]

B. Off-road or otherwise safe and secure holding areas for motor vehicles, mopeds, or both, involved in any roadblock stop[.]

C. Adequate advance warning of the fact and purpose of the roadblocks, either by sign posts, flares, or other alternative methods[.]

D. Use Light generators or other lighting source to illuminate the roadblock area.

E. Uniformed police officers carrying proper identifications.

1. Minimum of four (4) uniformed officers at each check point.

2. Minimum of three (3) marked police vehicles with their emergency lights activated.

F. The roadblock shall be terminated at the discretion of the Supervisor in Charge when traffic congestion occurs.

**VI. Pub[l]ic service announcements may be published prior to the conducting of roadblocks.**

**VII. All personnel shall strictly adhere to the provisions of this order.**

(Emphasis in original.)

### IV.

### KAUAI POLICE DEPARTMENT GO 2000–01 DOES NOT AFFECT PRIVATE RIGHTS OF OR PROCEDURES AVAILABLE TO THE PUBLIC

The State challenges the second sentence of Finding of Fact 14: "GO 2000–01 is there-

fore a regulation or directive which affects private rights of or procedures available to the public." The challenged Conclusions of Law 8 and 9 rest on this "finding of fact," which is fundamentally a conclusion of law.

It is undisputed that GO 2000–01 was not adopted pursuant to HRS Chapter 91. GO 2000–01 would not be required to be adopted pursuant to Chapter 91 if it concerned "only the internal management of an agency and not affecting private rights of or procedures available to the public." HRS § 91–1(4) (1993) (defining "rule" subject to requirements of Chapter 91); *see also*, HRS § 291E–19 (cross-reference to HRS § 91–1(4)).

In *State v. Fedak*, 9 Haw.App. 98, 825 P.2d 1068 (1992), this court held that a Honolulu Police Department (HPD) regulation establishing and implementing an intoxication control roadblock program was "aimed at prescribing and controlling the police officer's activities in order to minimize the intrusion on the driver's rights."[4] *Id.* at 101, 825 P.2d at 1070. This court concluded the HPD regulation was an internal one as defined by HRS § 91–1(4) and "therefore, exempt from Chapter 91's promulgation provisions." *Fedak*, 9 Haw.App. at 100, 825 P.2d at 1070. This court, however, ruled that the stop at the roadblock was illegal because the police did not comply with an HPD regulation re-

garding the location of the roadblock. *Id.* at 104, 825 P.2d at 1072.

This court followed the *Fedak* decision with *In re Doe*, 9 Haw.App. 406, 844 P.2d 679 (1992), which held that Hawai'i County Police Department (HCPD) field sobriety testing procedures concerned only the internal management of HCPD and were not subject to the requirements of Chapter 91. *In re Doe*, 9 Haw.App. at 412, 844 P.2d at 682–83.

In response to this court's decision in *Fedak*, the Hawai'i Legislature enacted Act 183:

**ACT 183          H.B. NO. 4**

A Bill for an Act Relating to Police Roadblock Programs.

*Be It Enacted by the Legislature of the State of Hawaii.*

SECTION 1. In *State v. Fedak*, 9 Haw. App. 98, 825 P.2d 1068 (1992), the Hawaii intermediate court of appeals [sic] ruled that internal police roadblock procedures exceeding the minimum statutory roadblock requirements, as set out in section 286–162.6, Hawaii Revised Statutes (HRS), must be "scrupulously" followed and that failure to do so will result in a determination that motor vehicles stopped at such a roadblock have been improperly seized. The legislature finds and declares that it did not intend this outcome in enacting sections 286–162.5 and 286–162.6[5] of the

---

4.  The Honolulu Police Department regulation referred to in *Fedak* was adopted pursuant to Hawaii Revised Statutes (HRS) § 286–162.5 (1985), which, at that time, read as follows:

> **§ 286–162.5  Authorization to establish intoxication control roadblock programs.** The police departments of the respective counties are authorized to establish and implement intoxication control roadblock programs in accordance with the minimum standards and guidelines provided in section 286–162.6. The chief of police in any county establishing an intoxication control roadblock program pursuant to this section shall specify the procedures to be followed in carrying out the program in rules adopted under chapter 91; provided that the procedures shall be in conformity with and not more intrusive than the standards and guidelines described in section 286–162.6.

HRS § 286–162.5 was subsequently re-enacted as HRS § 291E–19 (the statute at issue in the instant case) by Act 189 § 23 of the 2000 Hawai'i Legislature.

5.  HRS § 286–162.6 (1985 & Supp.1991) read at the time as follows:

> **§ 286–162.6  Minimum standards for roadblock procedures.** (a) Every intoxication control roadblock program shall:
> (1) Require either that all motor vehicles, or mopeds, or both, approaching roadblocks be stopped, or that certain motor vehicles, or mopeds, or both, be stopped by selecting motor vehicles, or mopeds, or both, in a specified numerical sequence or pattern.
> (2) Require that roadblocks be located at fixed locations for a maximum three-hour period.
> (3) Provide for the following minimum safety precautions at every roadblock:
> (A) Proper illumination;
> (B) Off-road or otherwise safe and secure holding areas for motor vehicles, or mopeds, or both, involved in any roadblock stop;
> (C) Uniformed police officers carrying proper identification;
> (D) Adequate advance warning of the fact and purpose of the roadblocks, either by sign posts, flares, or other alternative methods; and
> (E) Termination of roadblocks at the discretion of the police officer in charge when traffic congestion would otherwise result.

Hawaii Revised Statutes. Accordingly, the purpose of this Act is to clarify that, in the case of internal police procedures that do not fall within the definition of "rule" under section 91–1(4), failure to comply scrupulously with such internal police procedures shall not invalidate a roadblock that otherwise meets the minimum statutory criteria provided in section 286–162.6.

SECTION 2. Section 286–162.5, Hawaii Revised Statutes, is amended to read as follows:

" § 286–162.5 **Authorization to establish intoxication and drug control roadblock programs.** The police departments of the respective counties are authorized to establish and implement intoxication and drug control roadblock programs in accordance with the minimum standards and guidelines provided in section 286–162.6. The chief of police in any county establishing an intoxication and drug control roadblock program pursuant to this section shall specify the procedures to be followed in carrying out the program in rules adopted under chapter 91; provided that the procedures shall be in conformity with and not more intrusive than the standards and guidelines described in section 286–162.6. *In the case of internal police procedures that do not fall within the definition of "rule" under section 91–1(4), failure to comply scrupulously with such internal police procedures shall not invalidate a roadblock that otherwise meets the minimum statutory criteria provided in section 286–162.6.*"

1999 Haw. Sess. Laws Act 183, §§ 1 & 2 at 629–30 (emphasis in original; footnote not in original).

In recommending the passage of House Bill No. 4, which became Act 183, the legislative committees that reviewed and reported on House Bill No. 4 wrote in part:

Your Committee finds that the legal seizure of vehicles stopped at intoxication and drug control checkpoints have been questioned in courts when procedures do not adhere to minimum statutory roadblock requirements. Your Committee further finds that police departments may wish to exceed minimum requirements without jeopardizing the validity of their roadblocks.

This bill proposes to permit police departments to exceed the minimum statutory roadblock requirements without invalidating the procedures used in their roadblocks.

Hse. Stand. Comm. Rep. 71, in 1999 House Journal, at 1036.

The purpose of this bill is to provide that failure to comply scrupulously with police procedures that exceed the minimum statutory roadblock requirements will not invalidate a roadblock that otherwise meets the minimum statutory criteria.

. . . .

Your Committee finds that the failure to comply scrupulously with police procedures that exceed the minimum statutory roadblock requirements should not invalidate a roadblock that otherwise meets the minimum statutory criteria.

Hse. Stand. Comm. Rep. 941, in 1999 House Journal, at 1378.

Your Committee finds that the current law was not intended to be interpreted to invalidate roadblocks that did not comply with internal police procedures that exceed the minimum statutory roadblock requirements.

Your Committee finds that internal police procedures for roadblocks, which may relate to points as minor as the color of vest to be worn by officers at the roadblock, should not be treated as having the weight of law for the purpose of determining the legal validity of a roadblock. However, your Committee notes that rules adopted pursuant to Chapter 91, Hawaii

---

(4) Provide for a sufficient quantity and visibility of uniformed officers and official vehicles to assure speedy compliance with the purpose of the roadblocks and to move traffic with a minimum of inconvenience.

(b) Nothing in this section shall prohibit the establishment of procedures to make road-

block programs less intrusive than required by the minimum standards provided in this section.

HRS § 286–162.6 was subsequently re-enacted as HRS § 291E–20 (the statute at issue in the instant case) by Act 189 § 23 of the 2000 Hawai'i Legislature.

**66**

Revised Statutes, after the public review and hearing process provided for by that chapter, should be followed after their adoption and may fairly be treated as requirements for a legally valid roadblock. Sen. Stand. Comm. Rep. 958, in 1999 Senate Journal, at 1351.

Your Committee finds that internal police procedures for roadblocks, which may relate to points as minor as the color of the vest to be worn by officers at the roadblock, should not be treated as having the weight of law for the purpose of determining the legal validity of a roadblock. However, your Committee agrees that rules adopted pursuant to Chapter 91, Hawaii Revised Statutes, after the public review and hearing process provided for by that chapter, should be followed after their adoption and may fairly be treated as requirements for a legally valid roadblock. Sen. Stand. Comm. Rep. 1485, in 1999 Senate Journal, at 1596.

The purpose of this bill is to clarify that, in the case of internal police procedures that are not subject to the Hawaii Administrative Procedure Act, chapter 91, Hawaii Revised Statutes, failure of the police to comply scrupulously with such internal police procedures shall not invalidate a roadblock that otherwise meets the minimum statutory criteria provided in section 286–162.6, Hawaii Revised Statutes.

The Hawaii intermediate court of appeals [sic], in *State v. Fedak*, 9 Haw.App. 98, 825 P.2d 1068 (1992), ruled that internal police roadblock procedures exceeding the minimum statutory roadblock requirements, as set out in section 286–162.6, Hawaii Revised Statutes, must be "scrupulously" followed and that failure to do so will result in a determination that motor vehicles stopped at such a roadblock have been improperly seized. Your Committee on Conference finds that the Legislature did not intend that properly constituted roadblocks, meeting the minimum statutory criteria under section 286–162.6, be invalidated merely because of the failure of the police to comply scrupulously with internal police procedures that are not subject to chapter 91.

Sen. Conf. Comm. Rep. No. 61, in 1999 Senate Journal, at 864–65; Hse. Conf. Comm. Rep. No. 61, in 1999 House Journal, at 935.

■ The Legislature did not find this court erred in *Fedak* when this court held that the HPD regulation establishing and implementing an intoxication control roadblock program was not subject to the requirements of HRS Chapter 91 in that it concerned "only the internal management of an agency and not affecting private rights of or procedures available to the public." HRS § 91–1(4). The Kauai Police Department GO 2000–01 is not legally distinguishable from the HPD regulation in *Fedak* as far as the applicability of HRS Chapter 91 to county intoxication control roadblock programs, and, therefore, GO 2000–01 was not required to be promulgated pursuant to HRS Chapter 91. We decline Gary K. Claunch's invitation to depart from precedent on this point:

Precedent is "[a]n adjudged case or decision of a court, considered as furnishing an example of authority for an identical or similar case afterwards arising or a similar question of law." *Black's Law Dictionary* 1176 (6th ed.1990). The "[p]olicy of courts to stand by precedent and not to disturb settled point[s]" is referred to as the doctrine of *stare decisis, id.* at 1406, and operates "as a principle of self-restraint with respect to the overruling of prior decisions." *Robinson v. Ariyoshi,* 65 Haw. 641, 653 n. 10, 658 P.2d 287, 297 n. 10 (1982), *reconsideration denied,* 66 Haw. 528, 726 P.2d 1133 (1983). The benefit of stare decisis is that it "furnish[es] a clear guide for the conduct of individuals, to enable them to plan their affairs with assurance against untoward surprise; eliminat[es] the need to relitigate every relevant proposition in every case; and maintain[s] public faith in the judiciary as a source of impersonal and reasoned judgments." *Id.* (citing *Moragne v. States Marine Lines, Inc.,* 398 U.S. 375, 403, 90 S.Ct. 1772, 26 L.Ed.2d 339 (1970)).

While "there is no necessity or sound legal reason to perpetuate an error under the doctrine of stare decisis[,]" *id.* (internal quotation marks and citation omitted), we agree with the proposition expressed by

the United States Supreme Court that a court should "not depart from the doctrine of stare decisis without *some compelling justification.*" *Hilton v. South Carolina Pub. Ry. Comm'n*, 502 U.S. 197, 202, 112 S.Ct. 560, 116 L.Ed.2d 560 (1991) (emphasis added). *Cf. Dairy Road Partners v. Island Ins. Co., Ltd.*, 92 Hawai'i 398, 421, 992 P.2d 93, 116 (2000) (stating that "a court should not overrule its earlier decisions unless the most cogent reasons and inescapable logic require it") (internal quotation marks and citations omitted). Thus, "when th[e c]ourt reexamines a prior holding, its judgment is customarily informed by a series of prudential and pragmatic considerations designed to test the consistency of overruling a prior decision with the ideal of the rule of law, and to gauge the respective costs of reaffirming and overruling a prior case." *Planned Parenthood of Southeastern Pennsylvania v. Casey*, 505 U.S. 833, 854, 112 S.Ct. 2791, 120 L.Ed.2d 674 (1992). In this calculus, "[c]onsiderations of stare decisis have special force in the area of statutory interpretation, for here, unlike in the context of constitutional interpretation, the legislative power is implicated, and [the legislative branch] remains free to alter what we have done." *Hilton*, 502 U.S. at 202, 112 S.Ct. 560, 116 L.Ed.2d 560 (internal quotation marks and citation omitted).

. . . .

... Adherence to the principle of "[s]tare decisis has added force when the legislature, in the public sphere, and citizens, in the private realm, have acted in reliance on a previous decision, for in this instance overruling the decision would dislodge settled rights and expectations or require an extensive legislative response." *Hilton*, 502 U.S. at 202, 112 S.Ct. 560, 116 L.Ed.2d 560.

*State v. Garcia*, 96 Hawai'i 200, 205–06, 29 P.3d 919, 925–26 (2001) (ellipses in original omitted).

We conclude there is no compelling justification for departing from the doctrine of stare decisis in this case. The Legislature relied on this court's holding in *Fedak* that the police department's regulation establishing and implementing an intoxication control roadblock program concerned only internal management of the department and was therefore not required to be promulgated pursuant to HRS Chapter 91. City and county governments (including their police departments), as well as the public, have acted in reliance on the precedent of *Fedak* since 1992. Overruling *Fedak* would dislodge settled rights and expectations. No cogent reason or inescapable logic requires this departure from precedent.

The district court erred when it found and concluded that GO 2000–01 was "a regulation or directive which affects private rights of or procedures available to the public" and was therefore subject to the requirements of HRS Chapter 91. The district court should have instead determined whether the Kauai Police Department intoxicant control roadblock program met the minimum statutory criteria provided in HRS § 291E–20.

## V.

## CONCLUSION

Therefore, the "Findings of Fact, Conclusions of Law, Decision and Order Granting Defendant Gary K. Claunch's Motion to Suppress, Filed on June 26, 2003," filed December 22, 2003 in the District Court of the Fifth Circuit is vacated, and this case is remanded to the district court for further proceedings consistent with this opinion.

