**Electronically Filed
Supreme Court
SCWC-22-0000545
04-MAY-2026
10:15 AM
Dkt. 27 OP**

IN THE SUPREME COURT OF THE STATE OF HAWAI'I

---o0o---

LINDA S. MARTELL,
Petitioner/Plaintiff-Appellee,

vs.

EMPLOYEE RETIREMENT SYSTEM, STATE OF HAWAI'I and BOARD OF
TRUSTEES OF THE EMPLOYEE RETIREMENT SYSTEM, STATE OF HAWAI'I,
Respondents/Defendants-Appellants.

SCWC-22-0000545

CERTIORARI TO THE INTERMEDIATE COURT OF APPEALS
(CAAP-22-0000534 AND CAAP-22-0000545; CASE NO. 1CCV-21-0001449)

MAY 4, 2026

EDDINS, ACTING C.J., GINOZA, AND DEVENS, JJ., CIRCUIT JUDGE
DeWEESE, IN PLACE OF McKENNA, ACTING C.J., RECUSED, AND
CIRCUIT JUDGE COPELAND, ASSIGNED BY REASON OF VACANCY

OPINION OF THE COURT BY EDDINS, J.

**I.**

An agency can change its rules. What it cannot do is change them without following the procedures the legislature requires. Much less enforce the change against someone who timely objects.

That's what happened here.

For nearly a decade, the Employee Retirement System (ERS) credited Judge Linda Martell with retirement service for her work as a per diem judge. A 1990 Memorandum defined the eligibility criteria. In October 2017, ERS unilaterally rescinded that memorandum. It stripped years of Martell's retirement credits.

ERS held no hearing. It gave no notice. It followed no rulemaking procedure required by Hawai'i Revised Statutes (HRS) chapter 91.

Martell challenged the ERS' decision. The circuit court sided with her. The ICA reversed the circuit court.

The circuit court got it right. We vacate the ICA's decision.

## II.

Statutes and a rule govern ERS membership. In this case, so did memoranda that operated as rules. Hawai'i's Administrative Procedure Act, HRS chapter 91, imposes procedural constraints on how agencies adopt, amend, or repeal rules.

This case turns on four questions.

First, who are ERS members? All state employees, including per diem workers, are members unless specifically excluded. HRS § 88-42 (2012). The statute reflects a legislative presumption of inclusion.

2

HRS § 88-43 (2012) qualifies that presumption.  The ERS Board may "deny membership to any class of part-time employees or persons engaged in temporary employment of three months or less[.]"  Vail held that the statute gives ERS the power to deny per diem employees membership as a class of part-time workers.  Vail v. Emps' Ret. Sys. of State, 75 Haw. 42, 66, 856 P.2d 1227, 1240 (1993).

Second, how does the ERS Board exercise its exclusion authority?  Through a rule.  Hawai'i Administrative Rules (HAR) § 6-21-14(5) excludes "[p]ersons in any position requiring less than one-half o[f] full-time employment."

But this rule says nothing about how to apply that threshold to per diem judges.  That gap gave rise to the memoranda at the center of this dispute.

Third, what is a rule and what happens when an agency adopts one?  HRS § 91-1 defines a "rule" as "each agency statement of general or particular applicability and future effect that implements, interprets, or prescribes law or policy[.]"  Two exceptions apply: (1) "regulations concerning only the internal management of an agency and not affecting private rights of or procedures available to the public," and (2) "intra-agency memoranda."  HRS § 91-1 (Supp. 2017).  To "adopt, amend or repeal" a rule, the agency "must follow the

3

rulemaking procedures under HRS § 91-3." Kawashima v. State, 140 Hawai'i 139, 149, 398 P.3d 728, 738 (2017).

Rules not made under HRS § 91-3 (Supp. 2018) "are invalid and unenforceable." Foytik v. Chandler, 88 Hawai'i 307, 315, 966 P.2d 619, 627 (1998). Rules are forward-looking. See HRS § 91-1. Where agencies aim to determine past or present rights or liabilities, they may opt to proceed through adjudication instead – avoiding HRS § 91-3's procedural requirements. See Flores-Case 'Ohana v. Univ. of Haw., 153 Hawai'i 76, 92, 526 P.3d 601, 617 (2023).

Fourth, may rules be challenged? Yes, but there's an expiration date. HRS § 91-3(f) imposes a three-year limitation period on procedural challenges to rules. If timely, HRS § 91-14(g)(3) (2012 & Supp. 2016) authorizes courts to reverse agency decisions "[m]ade upon unlawful procedure" where the petitioner's substantial rights have been prejudiced.

**III.**

We turn to the ERS memoranda.

On March 6, 1990, ERS sent the Judiciary a memorandum establishing the criteria for per diem judges to qualify for ERS membership. The 1990 Memorandum required three things: (1) work more than three consecutive months; (2) work more than twenty hours per week – fifty percent of full-time equivalence (50% FTE); and (3) have the Judiciary designate the position at 50%

4

FTE on an SF-5 personnel form.  An SF-5 is a personnel form that records employment classification, including FTE designation.

For twenty-seven years, the Judiciary enrolled per diem judges as ERS members under the 1990 Memorandum.  It deducted retirement contributions from their paychecks and provided ERS with payroll records.  But it never changed the SF-5 forms from 20% FTE to 50% FTE.  Judges who worked at least ten days per month were classified the same as those who did not.

Judge Martell was appointed to a per diem judge position in January 2005.  Her Judiciary SF-5 form designated her position at 20% FTE.  Yet from September 2008 through September 2017, ERS credited her service for every month she worked at least ten days.  No one questioned the arrangement.

In 2017, ERS discovered that the Judiciary had not changed its SF-5 forms from 20% FTE to 50% FTE.  On October 20, 2017, ERS issued a new memorandum rescinding the 1990 memorandum.  ERS declared that effective October 1, 2017 it would no longer credit per diem judge service because the positions were designated at 20% FTE.

On November 16, 2017, ERS informed Judge Martell by letter that she would lose credited service retroactive to October 1, 2017.  The letter stated, "The ERS revisited the Hawaii Administrative Rules . . . .  Prior to September 30, 2017, the

5

ERS credited your per diem judge service which you have accrued provided you worked at least 10 days per month[.]"

ERS did not follow any rulemaking procedure under HRS § 91-3 in issuing either the 2017 Memorandum or the November 16, 2017 letter.

Judge Martell protested. She filed a petition for contested case hearing on January 16, 2018, alleging unlawful rulemaking. She continued to serve as a per diem judge. Judge Martell worked more than ten days per month in most months, until retiring in December 2021.

An ERS hearing officer sustained part of Martell's claim. The Board of Trustees of the ERS overruled the hearing officer, and dismissed Martell's claims entirely. (Per HAR § 6-23-18, the ERS hearing officer submits a recommended decision for the Board of Trustees to accept, remand for clarification, or modify and replace with its own decision.)

Martell appealed to the Circuit Court of the First Circuit. Judge James Ashford reversed the ERS Board. He decided that both the 1990 and 2017 memoranda were rules under HRS § 91-1 – and neither had been lawfully promulgated per HRS § 91-3.

ERS appealed. The ICA agreed the memoranda were improper rule-making. But it still reversed the circuit court. In the ICA's view, the circuit court's own reasoning did not support the relief it ordered.

Martell applied for cert, and we accepted.

**IV.**

ERS invokes two exceptions under HRS § 91-1: "internal management" and "intra-agency memoranda." Neither applies here.

Both the circuit court and the ICA correctly concluded the 1990 Memorandum and the 2017 Memorandum are rules.

**A.   The Memoranda Are Not Internal Management**

First, the memos were not internal management. The internal management exception is construed narrowly. Green Party of Haw. v. Nago, 138 Hawai'i 228, 238, 378 P.3d 944, 954 (2016). Courts must "foreclose any tendencies that agencies might exhibit to avoid the rule-making requirements by casting regulations in terms of internal management." Id.

The test is functional. Courts look "to whom the regulations are directed" and whether they affect "private rights of or procedures available to the public." Kawashima, 140 Hawai'i at 150, 398 P.3d at 739.

HRS § 91-1's legislative history confirms the exception is narrow. The internal management exception covers "regulations and policy prescribed and used by an agency principally directed to its staff and its operations," such as the operation of penal institutions or custodial management of state property. H. Stand. Comm. Rep. No. 8, in 1961 House Journal, at 656.

7

ERS contends that both memoranda concerned only its internal management of eligibility determinations, like the DOE pay regulation in Kawashima.

The memoranda don't come close.

In Kawashima, the Department of Education (DOE) amended an internal regulation governing pay rates for its part-time teachers. 140 Hawai'i at 143, 398 P.3d at 732. This court held that the regulation did not "command members of the public to do anything . . . nor . . . declare the rights of members of the public[.]" Id. at 152, 398 P.2d at 741. The teachers were DOE employees. The regulation was directed to DOE staff.

Here, the memoranda were directed to the Judiciary – not ERS staff. They declared the rights of per diem judges to receive retirement benefits. Per diem judges are not ERS employees. They are members of the public the ERS serves.

We also observe that the memoranda did not merely set internal pay rates. Both affected the private rights of per diem judges. They declared who would receive retirement benefits and who would not. That's a determination of private rights.

ERS maintains that per diem judges are not "the public" because ERS membership is unavailable to the general population. This argument fails. By that logic, no agency action affecting state employees could ever be a rule. State employees are

always a narrower class than the general population.  Every regulated class is.

Green Party rejected the type of narrowing ERS urges.  138 Hawai'i 228, 378 P.3d 944.  The regulation there determined ballot counting procedures.  Id.  We held it was a rule because it could deprive voters of their right to vote.  Id. at 243, 378 P.3d at 959.  The question is whether the regulation affects private rights — not whether the affected class is large.

Martell's case more closely resembles Aguiar v. Hawaii Housing Authority, 55 Haw. 478, 522 P.2d 1255 (1974).  There, an internal regulation setting income limits for public housing eligibility was a rule because it determined tenants' private rights.  Id. at 489, 522 P.2d at 1263.

ERS insists that Aguiar is different.  The general public can apply for public housing but not for ERS membership, ERS says.  But that distinction doesn't matter.  The housing authority's regulation and the memoranda in this case determined whether a defined class of persons would receive a government benefit.  That's a clear impact on private rights.

ERS also invokes Rose v. Oba, 68 Haw. 422, 717 P.2d 1029 (1986) (hospital bylaws), Holdman v. Olim, 59 Haw. 346, 581 P.2d 1164 (1978) (prison dress code), and Doe v. Chang, 58 Haw. 94, 564 P.2d 1271 (1977) (welfare fraud investigation procedures).

9

It argues that the internal management exception applies even where the affected person is not an agency employee.

True. But those cases involved regulations that did not declare or alter substantive rights. A hospital's credentialing bylaws do not determine eligibility for a government benefit. A prison dress code does not strip retirement credits. Welfare fraud investigation procedures do not declare who receives benefits.

The ERS' memoranda declared and altered substantive rights.

**B.    The Memoranda Are Not Intra-Agency Communications**

Next, the 1990 and 2017 memoranda were not intra-agency communications.

The intra-agency communications exception is also construed narrowly. Green Party, 138 Hawai'i at 238, 378 P.3d at 954.

ERS cites Crosby v. State Dep't of Budget & Finance, 76 Hawai'i 332, 876 P.2d 1300 (1994), where this court held that a Department of Accounting and General Services circular sent to other state departments was not a rule. ERS ignores why the circular wasn't a rule. The circular did not "bind any member of the public . . . with respect to any substantive right" nor "declare the rights of the public in any respect." Id. at 345-46, 876 P.2d at 1313-14.

In contrast, the memoranda did. They determined when and whether per diem judges would receive retirement benefits. The

form of the communication is not dispositive.  The substance is.

And this court disfavors form over substance.  Rodriguez v.

Mauna Kea Resort LLC, 156 Hawai'i 289, 295, 574 P.3d 309, 315

(2025).

ERS warns that treating inter-agency memoranda as rules

would chill routine government correspondence.

The sky will not fall.  Agencies remain free to correspond

as they wish.  What they may not do is alter the public's

substantive rights through informal memoranda.  What they may

not do is evade the procedural safeguards the legislature has

required.  HRS § 91-3 exists to quash those moves.

**C.   The 2017 Memorandum and November letter Are Void as to Martell**

We turn to the 2017 Memorandum.  It is void as to Judge

Martell.

The 2017 Memorandum is a rule.  It was adopted without

following HRS § 91-3's rulemaking procedures.  So it is "invalid

and unenforceable."  Foytik, 88 Hawai'i at 315, 966 P.2d at 627.

Judge Martell challenged it within three years of its

adoption.  HRS § 91-3(f).  Thus, the 2017 Memorandum is void as

to her.

The November 16, 2017 letter to Judge Martell fares no

better.  ERS argues the letter did not "rely on" either

memorandum and should stand independently.  But the letter's own

11

text refutes this claim.  It declared that ERS had "revisited" its administrative rules and would "no longer credit membership service" for per diem judges.  The letter expressly acknowledged a policy reversal.  We treat the letter as notice implementing the 2017 Memorandum.

But, even if the letter were treated as an independent agency action, it would itself constitute either a rule (with the same procedural defects) or an adjudication.

Since the letter is forward-looking, it is not an adjudication.  As explained in Flores-Case 'Ohana, "Adjudications handle the past or current rights of specific people; rulemakings make law for everyone, for the future."  153 Hawai'i at 92, 526 P.3d at 617.

And even if the letter were an adjudication, ERS still invalidly exercised discretion.  An agency adjudication is an abuse of discretion when it reflects a "sudden change of direction" that "leads to undue hardship for those who had relied on past policy."  Application of Hawaiian Elec. Co., Inc., 81 Hawai'i 459, 468, 918 P.2d 561, 570 (1996).  The letter did exactly that.  It reversed a twenty-seven-year policy without notice, without hearing, and without any of the procedural protections that adjudicatory policymaking requires.  Application of Hawaiian Elec. Co., Inc., 66 Haw. 538, 541, 669

P.2d 148, 151 (1983) (parties must have the right to examine and cross-examine witnesses).

Thus, both the 2017 Memorandum and the letter implementing it are void as to Martell. But what about the 1990 Memorandum?

**D.   The 1990 Memorandum Remains Valid**

The ICA correctly ruled that the 2017 Memorandum had no effect. But it erred in treating the 1990 Memorandum as equally infirm. It reasoned that "[b]ecause the 1990 and 2017 Memoranda were improper, per diem judges were members by default under HRS § 88-42, unless they were excluded by the ERS under HRS § 88-43."

The ICA's analysis overlooked HRS § 91-3(f). ERS implemented the memorandum in 1990. No party challenged that rule within three years. Under HRS § 91-3(f), the window to challenge closed.

ERS argues that HRS § 91-3(f) does not apply because ERS never formally "adopted" the 1990 Memorandum through any rulemaking process.

This position produces untenable results. Under ERS' reading, a rule that has been practiced and relied upon for decades can be invalidated on procedural grounds at any time, so long as it was adopted with *no* procedures at all. Rules with less severe procedural defects would be protected by the three-year bar. Yet rules with *more* severe defects would not.

ERS' reading would bury HRS § 91-3(f).  That law was enacted to prevent agencies from being forced to "readopt their administrative rules at great expense to the taxpayers."  S. Stand. Comm. Rep. No. 1277, in 1989 Senate Journal, at 1280.  It applies to all rules.

The 1990 Memorandum is a rule.  It was "adopted" when ERS began to practice it.  The three-year window has long since shut.  Thus, it remains valid and operative.

Because the 2017 Memorandum is void as to Judge Martell, the 1990 Memorandum, the only valid rule governing her eligibility, controls for the full duration of her service.

**V.**

We now address the ICA's central error.

Two distinct inquiries are important here: whether ERS' interpretation was substantively permissible, and whether the agency followed the procedures required to implement it.

These questions are independent.  Under HRS § 91-7(b) (2012 & Supp 2015), a rule may be challenged four ways: it violates the constitution, it violates a statute, it exceeds the agency's authority, or it was not lawfully promulgated.  A rule can satisfy the first three criteria and fail the fourth.

Substantive correctness does not mend procedural invalidity.  See HRS §§ 91-3, 91-7; Green Party, 138 Hawai'i at 239, 378 P.3d at 955 (rule is invalid for procedural errors if

14

it was adopted without complying with HAPA's statutory rule-making requirements); Foytik, 88 Hawai'i at 315, 966 P.2d at 627.

Two questions were at issue here. Did ERS get the substance right? Did it follow the right procedure?

The ICA read the circuit court as answering the first question yes – that ERS' interpretation of HAR § 6-21-14(5) was within its statutory authority. And the circuit court got the second question right. ERS could not enforce a rule adopted without following HRS § 91-3 against a petitioner who timely challenged it.

These are harmonious conclusions. The first addresses what ERS *may* do. The second addresses what ERS *has* done.

The ICA called the reasoning irreconcilable. Not so.

In administrative law it can be true at the same time that an agency's substantive interpretation is permissible and its implementation of that interpretation is unlawful. HRS § 91-14(g)(3) authorizes reversal for decisions "[m]ade upon unlawful procedure." There is no exception for decisions that are substantively correct.

To hold otherwise would permit agencies to sidestep chapter 91 whenever they think their interpretation is correct. That would gut the framework. Rulemaking procedures serve purposes beyond substantive accuracy. They improve the quality of agency rules through public participation, enhance the legitimacy of

15

those rules, and ensure accountability.  If correctness alone suffice, the legislature would not have required the procedures in the first place.

Next, the ICA overstated what the circuit court held.

The ICA characterized the circuit court as having "determined that the ERS Board correctly interpreted ERS rules for membership exclusion, specifically HAR § 6-21-14(5)."  But the court's actual language was more limited.

The circuit court stated, "Appellant argues that the Board incorrectly interpreted ERS rules for membership exclusion.  The Court disagrees with Appellant's interpretation and argument concerning the proper interpretation of HAR § 6-21-14."  It added, "Once an employee is excepted pursuant to subsection 6-21-14(5), that exception stands."

Disagreement with Judge Martell's interpretation is not the same as endorsing the ERS Board's take.  The circuit court did not say ERS was right.  It said it disagreed with Judge Martell's particular characterization.  And the court's bottom line — restoring her retirement benefits — is inconsistent with any reading that it fully endorsed ERS' position on eligibility.

ERS argues that Judge Martell's failure to cross-appeal from the circuit court's ruling on HAR § 6-21-14(5) torpedoed her claim.  It did not.  In the absence of a clear circuit court

ruling on ERS' eligibility determination, there was nothing for Martell to cross-appeal.

## VI.

We turn to remedy.  Nakamine controls.  "Where an administrative agency, by the failure to follow its rules, prejudices the substantial rights of a party before it, it may be necessary for the court, under the power to modify the decision and order of the agency, to fashion relief appropriately remedying the prejudice caused."  Nakamine v. Bd. of Trs. of Emps.' Ret. Sys., 65 Haw. 251, 255, 649 P.2d 1162, 1165 (1982).

The 2017 Memorandum reversed ERS' existing policy.  ERS said so.  The memo's stated purpose was to "rescind" the 1990 Memorandum and that "[e]ffective October 1, 2017, the ERS no longer credits per diem judge service."

The November 2017 letter confirmed that ERS had "revisited" its rules and was reversing its prior policy of crediting service for judges who worked at least ten days per month.  In ERS' own words, the 2017 Memorandum was a reversal – not mistake correction.

The reversal was unlawfully adopted.  It prejudiced Judge Martell's substantial rights.  She contributed to the retirement system for years.  She planned her workload for her final years of service based on the existing policy.  ERS credited her

service toward retirement under the terms of the 1990 Memorandum.  Then when retirement loomed, ERS yanked her benefits by memorandum.  The U-turn occurred with no notice, no hearing, and without following any of the rulemaking procedures required by HRS chapter 91.

Because ERS' decision was "[m]ade upon unlawful procedure," HRS § 91-14(g)(3) authorizes reinstatement of Judge Martell's retirement benefits.

## VII.

We vacate the ICA's December 8, 2025 Judgment on Appeal and affirm the circuit court's September 9, 2022 Amended Final Judgment.

The case is remanded to the ERS Board with instructions to credit Judge Martell for service from October 1, 2017, to December 31, 2021, for those months meeting the requirements of the 1990 Memorandum as previously interpreted.

John L. Barkai, Lance D.
Collins, and Bianca K. Isaki
(on the briefs)
for petitioner

Randall S. Nishiyama and
Diane W. Wong (on the briefs)
for respondents

/s/ Todd W. Eddins

/s/ Lisa M. Ginoza

/s/ Vladimir P. Devens

/s/ Wendy M. DeWeese

/s/ Rebecca A. Copeland



18